UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| ANA MELENA, | ) | No. ED CV 11-01823-VBK |
| Plaintiff, | )<br>) | MEMORANDUM OPINION |
| v. | )<br>) | AND ORDER |
| MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security, | )<br>)<br>)<br>) | (Social Security Case) |
| Defendant. | )<br>) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1.   Whether there is a Dictionary of Occupational Titles ("DOT")

          inconsistency in the Administrative Law Judge's ("ALJ") finding that Plaintiff can perform jobs such as hand bander and tube operator;

2. Whether the ALJ properly determined that Plaintiff did not meet Listing 11.03; and

3. Whether the ALJ fully and fairly developed the record.

(JS at 3.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THERE IS NO DOT INCONSISTENCY BETWEEN PLAINTIFF'S**

**ASSESSED RESIDUAL FUNCTIONAL CAPACITY ("RFC")**

**AND THE EXERTIONAL REQUIREMENTS OF JOBS IDENTIFIED AT STEP FIVE**

In his Decision (AR 19-28), the ALJ adopted the opinion of the testifying vocational expert ("VE") at the hearing held on July 12, 2001 (AR 312-351) regarding two jobs available to Plaintiff. This Step Five conclusion is set out at AR 28, in which the ALJ identifies the following two jobs: hand bander (DOT 920.687-030) and tube operator (DOT 239.687-014). The ALJ made this Step Five determination based on his determination of Plaintiff's RFC, which is set out at AR 23: "[Plaintiff] has the [RFC] to perform a limited range of sedentary exertion. The [Plaintiff] is limited to lifting and carrying 10 pounds occasionally and less than 10 pounds frequently. She can stand and walk for two hours out of an eight-hour workday, and she can sit for six hours out of an eight-hour workday. She is limited to simple

repetitive tasks which do not require hypervigilance, and which are non-public. She might miss work up to twice a month. <u>She cannot perform work, which requires spine dexterity, such as threading a needle</u>. She has the usual seizure precautions, ..." (Emphasis added.)

In her first issue, Plaintiff focuses upon that part of the assessed RFC in which the ALJ determined that Plaintiff cannot perform work which requires fine dexterity, such as threading a needle. In Plaintiff's opinion, the two jobs identified at Step Five would require Plaintiff to use fine fingering constantly to perform them. Plaintiff's counsel provides anecdotal descriptions of these two jobs, and assesses that based on these descriptions, "constant fine fingering" is a required non-exertional element of these jobs.

Plaintiff makes a second, or sub-argument, that she is not capable of performing these jobs because they require the ability to subtract, which she asserts is beyond her capability. (JS at 6-7.) Plaintiff is generally correct in citing applicable law which requires that for an ALJ to rely upon a job description in the DOT which fails to comport with a claimant's limitations, the deviation must be explained. (<u>See</u> JS at 6, citing <u>Pinto v. Massanari</u>, 249 F.3d 840 (9th Cir. 2001).)

Plaintiff's arguments are undermined in several ways. First, Plaintiff's assessment that both identified jobs require fine fingering does not correlate with the DOT descriptions of these jobs. As to the job of hand bander, the DOT description requires fingering which is done "constantly," identified as more than two-thirds of the time, but the finger dexterity demands are expressed in terms of population in the lowest one-third, which excludes the bottom ten percent and requires only a "low degree." This description does not

correlate with Plaintiff's claim that the job requires fine fingering. In addition to that, the VE's testimony at the July 12, 2011 hearing must be accounted for, and when this is done, does not support Plaintiff's argument. The VE testified that Plaintiff could not perform any "fine dexterity like threading a needle." (AR 344.) In identifying the jobs of hand bander and tube operator, the VE indicated that these were "not threading a needle, it is fine work." (AR 344-45.) This does not correlate with the fine dexterity which the VE identified as something like threading a needle, which the ALJ reiterated in his Decision. (AR 23.) Finally, the ALJ, as required, did ask the VE whether her testimony was consistent with the DOT, which elicited a positive response. (AR 345.)

Turning to the claim made by Plaintiff that she is incapable of subtraction, there is no such limitation in the RFC. (AR 23.) The ALJ did note that Dr. Glassman had opined that it is "possible" that Plaintiff cannot subtract, but he also concluded that she has average intelligence. In any event, the issue is somewhat of a red herring, in view of the VE's testimony that inability to do subtraction would not preclude Plaintiff from performing the job of hand bander. (AR 345.) Any deviation between Plaintiff's inability to do subtraction, assuming, <u>arguendo</u>, that this is a fact, and the DOT requirements of the job, were explained by the VE, who specifically testified that no such subtraction operations would be required. (AR 345.)

For the foregoing reasons, the Court determines that Plaintiff's first issue is not meritorious.

//
//
//

**II**

**THE EVIDENCE DOES NOT ESTABLISH THAT PLAINTIFF MEETS LISTING 11.03**

In his decision, the ALJ concluded that Plaintiff does not have an impairment or impairments that meets or medically equals Listing 11.02 (grand mal seizures) or 11.03 (petit mal seizures). (AR 22.) Plaintiff challenges only the latter conclusion, and thus the Court will not address whether or not the ALJ erred in finding that Plaintiff does not meeting Listing 11.02.

The specific requirement of Listing 11.03 includes a frequency of seizures more than once weekly in spite of at least of three months of prescribed treatment; alteration of awareness or a loss of consciousness; and transient postical manifestations of unconventional behavior or significant interference with activity during the day.

The essential evidentiary requirement for showing that a claimant meets a neurological listing set forth in § 11.00 is described in § 11.00A, which notes that there must be "at least detailed description of a typical seizure," and, that, "testimony of persons other than the claimant is essential for description for type and frequency of seizures if professional observation is not available." This is reiterated in Social Security Ruling ("SSR") 87-6, which amplifies the requirements of the Listing, noting that if professional observation is unavailable, a description can be obtained from a third party such as a family member or neighbor.

During the hearing, Plaintiff's mother testified that Plaintiff suffers seizures which usually last five to six minutes but that they are all different in that some are shorter and some are longer. The normal length of a seizure is two to six minutes. As Plaintiff correctly points out, the ALJ denied efforts by claimant's

representative at the hearing to ask Plaintiff's mother about the "characteristics" of the seizure, as the ALJ found, "I don't think I need that, because I understand she would be incapacitated from working from two minutes to six minutes, right?" (AR 349.)  Plaintiff asserts that this ruling was erroneous in that it precluded Plaintiff from introducing relevant evidence because of the importance of obtaining descriptions of a "typical seizure pattern including all associated phenomena." (JS at 11-12.)

Plaintiff did provide testimony as to her seizure experiences, noting that they occur at least one time per week and that many times she has multiple seizures on a daily basis.  These can last approximately three to four minutes during which she loses concentration or consciousness.  Following a seizure, she must lie down for some period of time to recover, because she feels dizzy.  She does not always fall down, but sometimes bites her tongue or her cheek during a seizure, which can come at unexpected times.  There are no warning symptoms or signs.  Her hands shake from medication that she is taking for her seizures. (AR 319-324.)

Finally, Plaintiff indicates that she meets the requirement of the Listing that she does take prescribed anti-convulsive treatment, but nevertheless suffers from a frequency of seizures which comes within the Listing Requirement.

First addressing the issue of the testimony of Plaintiff's mother, the ALJ determined not to give it great weight because of material inconsistencies between that testimony and other evidence in the record.  For example, Plaintiff's mother testified that Plaintiff needed help and supervision with her bathing and also supervision while using the toilet. (AR 27, 179.)  The ALJ noted that school

records indicated that Plaintiff is independent in activities of daily living which include self help and self care. (AR 27, 194.) Similarly, the ALJ expressed a concern that while Plaintiff's mother alleged that Plaintiff needed everyday reminders to take her medication, Plaintiff's own testimony at the July 12, 2011 hearing was that she knew the medication she had to take and when to take it, and that she took it of her own volition. (AR 27, 180, 325.) Further, Plaintiff's mother testified that Plaintiff had difficulty performing numerous postural activities, which include kneeling or squatting; however, the ALJ found no evidence in the record which would support that assertion. (AR 27, 183.) Such inconsistencies may be taken into account by an ALJ in determining the credibility of witness statements. In this case, the ALJ reasonably found that the testimony of Plaintiff's mother in effect greatly exaggerated Plaintiff's disabilities, and that this testimony would, therefore, be given little weight.

Further, the ALJ reviewed medical evidence which indicated that Plaintiff's medication largely controlled her seizures. (AR 26.) This indeed is consistent with the ALJ's notation that Plaintiff was examined by neurologist Kian ti Yu, who in October 2006 indicated that Plaintiff's seizures were fairly well controlled, were few and far between, and were generally very mild. (AR 26, 224.) Finally, as to frequency of seizures, the ALJ noted Plaintiff's own statements to Dr. Rollins, D.O., which indicated a frequency of seizures not only much less than that described by her mother, but as required by the Listing requirements.

For the foregoing reasons, the Court finds no merit with regard to Plaintiff's second issue.

**III**

**THE ALJ HAD NO OBLIGATION TO FURTHER DEVELOP THE RECORD**

In her third and final issue, Plaintiff asserts that because of dearth of medical records in the file concerning her seizures, and in conjunction with the order of the Appeals Council on remand requiring the ALJ to take further action to complete the administrative record, the ALJ failed in his obligation to "insure whether there were any additional medical records and if there were that the records would be obtained." (JS at 18.) But, as the Commissioner correctly notes, case precedent only requires development of the record where the record is inadequate or ambiguous. See Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). Here, there are sufficient medical records concerning Plaintiff's seizures to defeat the argument that the ALJ had an independent duty to determine if there were more records. In any event, Plaintiff fails to identify any records which might exist that would be relevant in the determination of her claim. Although the ALJ has an independent duty to develop the record in the appropriate case, even when, as here, a claimant is represented at a hearing, Plaintiff has failed to establish support for her claim that such a duty existed in this case.

The decision of the ALJ will be affirmed. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: August 2, 2012              /s/
                                   VICTOR B. KENTON
                                   UNITED STATES MAGISTRATE JUDGE